**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

MICHELLE SANDS

                                **Plaintiff,**

        -against-

GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C.

                                **Defendant.**
-------------------------------------------------------------------X

Case No.: _____

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Michelle Sands brings suit against Defendant debt collector Gutman, Mintz, Baker & Sonnenfeldt, P.C. (hereinafter "GMBS") for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"); the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the TCPA); and New York Judiciary Law § 487 (the "Judiciary Law"), and in support alleges as follows.

## JURISDICTION AND VENUE

1.  The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq*. Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law, the FDCPA and the TCPA. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202.

2.  Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in New York County, New York.

## PARTIES

3.     Plaintiff Michelle Sands (hereinafter "Ms. Sands") is an individual residing in New York County, New York.

4.     Defendant GMBS is a domestic professional corporation and a debt collection law firm, organized under the laws of the State of New York. GMBS is a debt collection law firm, regularly filing collection lawsuits on behalf of putative creditors and debt buyers; making collection phone calls; and sending out collection letters. GMBS regularly collects consumer debts alleged to be due to another, and that is its primary purpose. GMBS is thus a "debt collector" as defined by the FDCPA.

## STATEMENT OF FACTS

5.    Ms. Sands has been a victim of mistaken identity or identity theft going back to at least 2006.

6.   Beginning in or around 2006, Ms. Sands began to receive collection phone calls from unknown debt collectors, seeking to collect a debt owed by a consumer named "Michelle Sands-Bey" or "Michelle Bey".

7.   Ms. Sands is not Michelle Sands-Bey; nor has she ever gone by the name Bey in any form.

8.   Ms. Sands would tell the debt collectors that she was not Michelle Sands-Bey or Michelle Bey, but she would still continue receiving threatening phone calls.

9.   The unknown debt collectors would tell Ms. Sands that detectives were being hired and that she would be arrested if she did not pay.

2

10. Ms. Sands knew that the debt collectors were seeking the wrong person for an account that she herself did not owe, but she still worried about the threats, genuinely fearing that she could be apprehended and arrested for the debt, even if in error.

11. The debt collection attempts against Ms. Sands (for a putative debt owed by someone named either Bey or Sands-Bey) eventually subsided.

12. However beginning approximately 2012 and continuing thereafter, GMBS began making telephone calls to Ms. Sands seeking to collect a putative debt on behalf of SLM Savoy Park I, LLC, a property management company.  GMBS asked to speak with a Michelle Sands-Bey.  Ms. Sands repeatedly informed GMBS that she was Michelle Sands, not Michelle Sands-Bey; that she had never gone by the name Michelle Sands-Bey; that she did not owe the debt sought to be collected; and repeatedly asked GMBS to stop harassing her.

13. However, GMBS continued to contact Ms. Sands to collect the putative debt of Michelle Sands-Bey.  Nevertheless, GMBS threatened Ms. Sands, telling her that they were going to bring her to court.

14. Ms. Sands felt afraid that even though she was not Michelle Sands-Bey, she could somehow be mistakenly held liable for the alleged debt—and even be arrested, especially considering the threats she had previously received in 2006. Ms. Sands did not know what to do. The GMBS collection attempts caused her to feel exasperated, scared and emotionally drained. The GMBS collection attempts affected her relationship with her long-term partner, who she lived with.

15. On October 20, 2014, GMBS filed a collections lawsuit on behalf of Savoy titled *SLM Savoy Park I, LLC v. Michelle Sands-Bey*, Index No. 653185/2014 (Supreme Court of the State

of New York, County of New York) (the "Bey Lawsuit").

16. The "Bey Lawsuit" sought to collect a sum of "$31,644.49 with interest thereon from December 1, 2010 together with the costs of this action." *See Exhibit A.*

17. The putative defendant in the Bey Lawsuit is an individual named Michelle Sands-Bey. *Id.*

18. The putative debt was for rental arrears and costs at 60 West 142nd Street, Apt. 9E, New York, New York 10037 (hereinafter "60 West"). *Id.*

19. Ms. Sands, Plaintiff at bar, is ***not*** the proper defendant named in the Bey Lawsuit.

20. Ms. Sands has no connection to someone named Michelle Sands-Bey (the putative consumer in the Bey Lawsuit), nor to the putative debt (for rental arrears and costs at 60 West).

21. Ms. Sands has never used the name Bey in any manner.

22. Moreover, Ms. Sands has no connection whatsoever to the address 60 West.

23. Ms. Sands never leased an apartment at 60 West, never lived in an apartment located at 60 West, and never accrued any rental arrears for such an address.

24. As of August or September 2014, Ms. Sands moved from 438 Lenox to Minnesota to live and pursue a job opportunity.

25. Months later, GMBS sought to serve Ms. Sands at her prior address at 438 Lenox. According to his affidavit of service, the process server left a copy of the summons and complaint on the door of the 438 Lenox on November 10, 2014, and mailed a copy to that address.

26. Ms. Sand's long-term partner, James Moore, continued to reside at 438 Lenox, and he eventually informed Ms. Sands that he had a copy lawsuit against someone named Michelle Sands-Bey.

27. Upon hearing about the Bey Lawsuit from Mr. Moore, Ms. Sands worried but believed that she did not need to respond, given that the allegations had nothing to do with her. She was confused and unsure what to do.

28. Ms. Sands moved back to New York in February 2015 and continued to receive harassing phone calls from GMBS about the Bey Lawsuit and the debt that she did not owe, prompting her to change her phone number.

29. On June 24, 2014, GMBS filed a motion for default judgment.  A true and correct copy of the application is attached as Exhibit B and is incorporated by reference. Ms. Sands eventually received a copy of the motion for default, and attended the July 29, 2015 hearing date for the motion for default.

30. *All* of the exhibits GMBS affixed to their affirmation in support of its motion for a default judgment reference a person named ***Michelle Bey***; none of the exhibits reference Michelle Sands, nor even someone named Michelle Sands-Bey.[1]

   a.  Exhibit 1 is a copy of the undated residential lease signed by Michelle Bey.

   b.  Exhibit 2 is a copy of the March 24, 2009 lease renewal form.  The name of the tenant is listed as Michelle Bey, is signed Michelle Bey.

   c.  Exhibit 3 consists of two "resident ledgers" in the name of Michelle Bey totaling eleven pages and showing putative debts accrued over a period of seven years, from 2006 through 2013.

   d.  Exhibit 4 consists of (what GMBS contends) is an October 2, 2012 stipulation of settlement signed by Michelle Bey on in a prior landlord tenant proceeding, SLM SAVOY PARK I, LLC v. Michelle Bey, L&T Index No. 252132/2011. In other words, Michelle Bey actually appeared in the landlord tenant proceeding.

---

1 GMBS does attach an affidavit from an "agent" of SLM SAVOY PARK I, LLC that states the debt is owed by Michelle Sands-Bey. However, that affidavit makes reference to exhibits, all of which are exclusively in the name of Michelle Bey.

31. Therefore, there can be no doubt that GMBS knew, from its own moving papers, that when it moved for default judgment, that the debt was owed by a person named Michelle Bey, but for some unexplained and inexplicable reason, intentionally sought to enter judgment against Michelle Sands-Bay.

32. Property management companies typically only rent property to a tenant where they have been able to confirm that person's identity through a social security card and/or a driver's license, which would provide picture identification, a date of birth, an address, and a physical description of the tenant.  In a vigorously contested housing court action, GMBS must have had such documents.

33. GMBS actually knew that Ms. Sands was not the proper defendant in the Bey lawsuit, or, at the very least, sought judgment against Ms. Sands with a conscious disregard or reckless indifference as to whether Ms. Sands owed the debt.

34. In the alternative, GMBS filed suit and sought judgment against Ms. Sands without performing a meaningful review of the facts and circumstances of the complaint. Any meaningful review of the Bey file would reveal that the name Sands is not the same as Sands-Bey; that the housing application, the housing lawsuit, and the signature on the housing court settlement were all in the name of Bey, not Sands-Bey; that the social security card and driver's license presumably submitted with the housing application was in the name of Bey, not Sands-Bey; and that GMBS was calling someone named Sands who continually said she was not Bey or Sands-Bey.

35. Upon receiving the motion for default, Ms. Sands worried that a default judgment could be entered against her for a debt she did not owe. Ms. Sands contacted GMBS to hopefully clear up the issue of mistaken identity or identity theft.

36. In early July 2015, Ms. Sands called GMBS inquiring about the Bey Lawsuit.

37. Someone at GMBS answered the phone and asked Ms. Sands if her name was Michelle Sands-Bey. Ms. Sands responded and said no, that her name is simply Michelle Sands.

38. GMBS then asked Ms. Sands to verify the last four digits of her social security number.

39. Ms. Sands complied with the request of GMBS and gave them the last four digits of her social security number.

40. GMBS confirmed that the last four digits of Ms. Sands' social security number did not match the last four digits of the social security number they had on file for the consumer in the Bey Lawsuit.

41. GMBS then told Ms. Sands that "she was coming in under nine difference social security numbers."

42. By acknowledging that it had nine different social security numbers for one person (a person can only have one social security number), GMBS knew that its records about the Bey Lawsuit and Bey consumer were problematic and that it was likely contacting the wrong consumer in Ms. Sands.

43. At that point, GMBS still did not agree to discontinue the action. GMBS did not even take minimal steps to determine whether they had sued the correct person. For example, GMBS did not ask Ms. Sands to send a copy of her social security card or her driver's license to match with the ones presumably with the lease application; to send proof of residence during the relevant time period; or to send an identity theft affidavit or police report stating that her identity had been stolen or at least there was a misidentification of her identity.

44. Rather, instead of taking any of these minimal precautions to avoid suing the wrong consumer, GMBS told Ms. Sands that "she had better get a lawyer."

45. For these reasons, there could be no doubt at this point that GMBS was willfully collecting on a debt that it knew Ms. Sands did not owe.

46. Ms. Sands felt extremely confused, frustrated, and uncertain about how to deal with her situation of mistaken identity, or perhaps identity theft

47. Ms. Sands saw that the motion for default had a return date on July 29, 2015.

48. Ms. Sands attended the court date in order to resolve her issue of mistaken identity and to again inform GMBS that they were serving, suing, and seeking to obtain a judgment from the wrong person. Ms. Sands felt that she absolutely needed to attend this court date, because she realized that GMBS was not going to drop the case, and feared that a judgment for over $30,000 would be entered against her.

49. On July 29, 2015, Ms. Sands went to the court and met with a referee who advised Ms. Sands to seek legal assistance.

50. Despite a GMBS representative seeing ***Ms. Sands*** (rather than Michelle Bey) appear on July 29, 2015, GMBS still did not move to discontinue the Bey Lawsuit, and rather, continued to attempt collection from ***Ms. Sands*** on the Bey account.  GMBS did not even ask Ms. Sands for her photo ID or social security card to confirm Ms. Sands' information with the information it had for Bey.

51. On or about, July 23, 2015, Ms. Sands' foster mother had passed away. Ms. Sands was devastated to lose her foster mother, with who she was very close. The funeral was in or around Raleigh, North Carolina. Given that the Bey Lawsuit court date was on July 29, 2015, Ms. Sands had to request that her foster mother's funeral be postponed until on or around July 30 or 31, 2015, so that she could attend the funeral without also missing her court date and incurring a default judgment for over $30,000. Ms. Sands felt immense pain and frustration having to deal with an improper collections lawsuit during a time of great personal loss. Moreover, because she had to reschedule the funeral and travel to North Carolina after her court date on July 29, 2015, Ms. Sands was forced to take off unpaid work days, which she could have avoided had she not needed to appear and defend the Bey Lawsuit.

52. After going to court on July 29, 2015, Ms. Sands contacted the New York City Bar Association regarding the GMBS collection attempts, and was eventually referred to the New York Legal Assistance Group ("NYLAG"), where Shanna Tallarico, Esq. helped her defend against the Bey Lawsuit.

53. On August 12, 2015 Ms. Sands, through her legal services counsel, filed an opposition to GMBS' motion for default judgment. A copy of the opposition is attached as Exhibit C and is a true and correct copy, except as to the disclosure of the date of birth.[2] Exhibit C is incorporated by reference.

54. In the Opposition, Ms. Sands signed an affidavit stating that she had never gone by the name Bey in any manner; that she never resided at that 60 West address; that she did not reside at the 438 Lenox address at the date of service, and included a copy of her lease in Minnesota during the time of putative service; and attached (an unredacted) copy of her driver's license, which showed her date of birth, height, weight, and description.  Ms. Tallarico subsequently emailed GMBS a copy of Ms. Sands social security card.

55. Despite this overwhelming evidence that it was suing the wrong person, GMBS would not move to withdraw its application for default judgment. If there were a sliver of doubt that GMBS knew it was collecting against the wrong person, Ms. Sand's affidavit and the driver's license removed all doubt, as did the production of the social security card.

56. On September 8, 2015, Judge Barry Ostrager, ruled in favor of Ms. Sands, denying the GMBS motion for default.

57. Importantly, Judge Ostrager apparently made a judicial determination that Ms. Sands was not Ms. Sands-Bey.  Specifically, Judge Ostrager stated that the motion for default is "denied for the reasons state in the affirmation of Shanna Tallarico or Michelle Sands."  *See Exhibit D*. Both

---

2 Ms. Sands' driver's license which was attached to the opposition to the default judgment motion was unredacted. However, the date of birth of the driver's license attached to this federal suit has been redacted.

of those declarations stated that Ms. Sands was not the correct party, and the basis for the assertions. *See* Exhibit C (affirmations in opposition to motion for default judgment).

58. Judge Ostrager dismissed the Bey Lawsuit without prejudice to being refiled "with evidence of proper service on Michelle <u>Sands-Bey</u>." *Id.* (emphasis in the original).

59. Defendant's actions caused Ms. Sands actual damages, including significant emotional distress. As a result of Defendant's conduct, Ms. Sands felt scared, including a genuine fear that she could potentially be arrested. She also felt completely exasperated and drained. The stress affected her personal relationships, including with her longtime partner. She cried frequently and would have her longtime partner repeatedly check the mail to see if more collection attempts were forthcoming. Moreover, Ms. Sands had to take off unpaid work days as a result of her July 29, 2015 court date, which significantly interfered with her personal need to attend her foster mother's funeral in North Carolina. Ms. Sands also was forced to seek out and retain counsel, spending energy and time, to defend a lawsuit that she never should have been contacted about.

## <u>COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT</u>

60. Ms. Sands repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

61. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial

scope.").

62. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general."   See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

63. The obligation Defendants alleged to be owed by Ms. Sands is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

64. Ms. Sands is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Ms. Sands was alleged to owe a "debt."

65. Defendant GMBS is a "debt collector" as defined in 15 U.S.C. § 1692a(6) because its principal purpose is the collection of debts and/or it regularly attempts to collect debts, directly or indirectly on behalf of its clients.

66. For the reasons stated in the Statement of Facts, Defendant materially the following sections of the FDCPA: 15 U.S.C. § 1692e, and 1692f. By way of example and not limitation Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt;

misrepresenting the services rendered or compensation which may be lawfully received; falsely representing or implying that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

67. GMBS inflicted damages upon Ms. Sands in the manner described in the statement of facts. GMBS is liable to Plaintiff for actual damages, statutory damages of up to $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees and costs.

## COUNT # 2: VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq*

68. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

69. Defendant violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, *et seq* by calling Ms. Sands on her cell phones without having been given consent, express or otherwise.

70. The use of predictive dialers is now the norm for debt collectors and, on information and belief, the calls placed to Ms. Sands' cell phones were made using predictive dialers.

71. The predictive dialers placed calls without human intervention until a connection was made, in which case the dialers attempted to connect the recipient with a debt collector.

72. On information and belief, the calls placed to Ms. Sands' cell phones used an autodialer that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

73. The TCPA, 47 U.S.C. §227, provides:

§ 227. Restrictions on use of telephone equipment
. . . (b) Restrictions on use of automated telephone equipment.
(1) Prohibitions. It shall be unlawful for any person within the United States, or any
person outside the United States if the recipient is within the United States–
(A) to make any call (other than a call made for emergency purposes or made with the
prior express consent of the called party) using any automatic telephone dialing system or
an artificial or prerecorded voice–
(iii) to any telephone number assigned to a paging service, cellular telephone service,
specialized mobile radio service, or other radio common carrier service, or any service
for which the called party is charged for the call; . . .

74. The TCPA, 47 U.S.C. §227(b)(3), further provides:

Private right of action.
A person or entity may, if otherwise permitted by the laws or rules of court of a State,
bring in an appropriate court of that State–
(A) an action based on a violation of this subsection or the regulations prescribed under
this subsection to enjoin such violation,
(B) an action to recover for actual monetary loss from such a violation, or to receive $500
in damages for each such violation, whichever is greater, or
(C) both such actions.

If the Court finds that the defendant willfully or knowingly violated this subsection or the
regulations prescribed under this subsection, the court may, in its discretion, increase the
amount of the award to an amount equal to not more than 3 times the amount available
under the subparagraph (B) of this paragraph.

75. Defendant violated the TCPA by placing automated calls to Plaintiff's cell phones.

76. Defendant made the calls to Ms. Sands' cell phones without prior express consent and not

for an emergency purpose.

77. Defendant is strictly liable for statutory damages of $500 per call to Ms. Sands' cell

phones, and up to three times that amount per call to the degree that its conduct was willful or

knowing pursuant to 47 U.S.C. §227(b)(3).

## COUNT #3: NEW YORK  JUDICIARY LAW  § 487 *ET SEQ.*

1.  New York Judiciary Law  § 487 creates a private right of action against an attorney

or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion,

with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

2. GMBS violated § 487 by seeking judgment against Ms. Sands for a debt GMBS knew Ms. Sands did not owe, or with a conscious indifference or reckless disregard as to whether Ms. Sands owed the debt; or, alternatively, without performing a meaningful attorney review.

3. The violations of § 487 by GMBS inflicted damages for the reasons and in the manner previously indicated.

4. Plaintiff is entitled to actual damages and punitive and exemplary damages, and attorneys' fees and costs for Defendant's violations of N.Y. Judiciary Law § 487 *et seq.*, and Plaintiff so seeks.

<u>**JURY DEMAND**</u>

5. Ms. Sands demands a trial by jury.

<u>**PRAYER**</u>

6. WHEREFORE, Plaintiff asks for judgment against Defendant for the following:

   a. The above referenced relief requested;

   b. Statutory damages against Defendant under the FDCPA up to $1,000.00 pursuant to 15 U.S.C. § 1692k (FDCPA);

   c. Statutory damages against Defendant of up to $500 per call to Ms. Sands' cell phones, and up to three times that amount per call to the degree that its conduct was willful or knowing pursuant to 47 U.S.C. §227(b)(3).

   d. Actual, exemplary, and punitive damages;

   e. Attorney fees and costs;

f.  A declaration that Defendants violated the FDCPA as alleged;

g.  Prejudgment and post judgment interest as allowed by law;

h.  General relief;

i.  All other relief, in law and in equity, both special and general, to which plaintiff

may be justly entitled.

Dated:  Brooklyn, New York
        October 19, 2015

Respectfully submitted,

*/s/ Ahmad Keshavarz*

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com